UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MAXINE HANSEN, | ) | CIV. 03-4087-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART |
| McLEOD USA PUBLISHING | ) | DEFENDANT'S MOTION FOR |
| COMPANY, d/b/a YELLOW | ) | SUMMARY JUDGMENT |
| BOOK USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Maxine Hansen, sued defendant, McLeod USA Publishing Company, d/b/a Yellow Book USA, Inc., (Yellow Book) alleging violations of the Age Discrimination in Employment Act, the Family and Medical Leave Act, Title VII of the Civil Rights Act, South Dakota anti-discrimination law, and for intentional infliction of emotional distress.  Yellow Book moves for summary judgment on all of Hansen's claims.  Yellow Book's motion for summary judgment is granted in part and denied in part.

**BACKGROUND**

The evidence, viewed in the light most favorable to the nonmoving party, Hansen, is:

Yellow Book hired Hansen as an account executive (salesperson) in July 1999.  She was 60 years old when she was hired.  Hansen worked out of Yellow Book's Sioux Falls, South Dakota, office.  Yellow Book has a policy against unlawful workplace harassment, and it alleges that it gave her a copy

of the policy when it hired her.  Wade Austin was hired as a salesperson in

Yellow Book's Billings, Montana, office in the spring of 1998 and was

promoted to a management position in the Sioux Falls office in the summer of

2000.  Austin became Hansen's supervisor when he was promoted, and he

was 25 years old at the time.

Hansen alleges that her husband was diagnosed with a terminal illness

while she worked for Yellow Book.  Austin allegedly complained to Hansen

that her husband's medication was causing Yellow Book's health insurance

premiums to increase, and he told her that her husband would be better off

dead rather than going through treatment.  She alleges that Austin denied

her request for time off so that she could take her husband to Rochester,

Minnesota, for an appointment on September 11, 2000.  Austin allegedly told

her that he would find a way to fire her if she asked human resources or

Austin's supervisor for medical leave.  Hansen alleges that Austin denied her

request for leave when her husband had heart surgery on December 3, 2000,

but did give her half a day off.  See Hansen Dep. at 174-77, 186-188,  (Docket

43-4)

Hansen alleges that Austin treated her worse than other employees.

Cindy Weberg, an account executive at Yellow Book, testified that Austin was

rude to Hansen, talked down to her, and told Hansen that she was too old to

do the job.  Weberg alleges that Austin did not treat younger employees this

way.  Pl.'s Ex. C.  Austin allegedly referred to her as "grandma" during weekly

2

staff meetings.  Hansen alleges that she asked Austin to stop referring to her as "grandma," but did not complain to the human resources department or Austin's supervisor.  Hansen alleges that Austin laughed at her when she complained to him.  Hansen alleges that Austin took sales leads away from her and that Austin gave better sales leads to younger workers.  She alleges that she never had sales leads taken from her before Austin became her supervisor.  See Hansen Dep. at 93-96 (Docket 43-4).

Yellow Book contends that it distributes sales leads based on whether the account executive is meeting his or her sales targets.  Yellow Book alleges that Hansen's sales figures demonstrate that she was one of the lowest performing account executives, and that this is why other employees received better sales leads.  In December 2000, Yellow Book gave Hansen her first written warning that she was not meeting her sales targets.  The record indicates she received four additional warnings for failing to meet sales goals, until Yellow Book terminated her employment on May 24, 2002.  Yellow Book contends that it fired Hansen for poor work performance.  DSUMF ¶¶ 21-28.

Hansen alleges that her job performance suffered because of Austin's discriminatory treatment and that her termination was an act of age and sex discrimination.  Hansen alleges that other workers who missed their sales targets were not terminated.  Hansen contends that when Austin informed her that Yellow Book was firing her, he told her that she was too old for the job.  She alleges that during the meeting in which she was fired, Austin

3

complained that it was people like Hansen that caused insurance premiums for younger workers to increase.   Hansen Dep. at 127-28 (Docket 43-4).  The decision to terminate Hansen involved Austin, his supervisor Jeff Johanns, and Julie Weiland from Yellow Book's human resources department.  DSUMF ¶ 29.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts

4

in the record.  <u>Vette Co. v. Aetna Cas. & Sur. Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

**I.    Alleged Wrongful Termination in Violation of the ADEA**

Hansen alleges she was terminated and subjected to a hostile working environment because of her age.  Pursuant to the Age Discrimination in Employment Act (ADEA), an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The ADEA only protects people who are at least 40 years old.  <u>E.E.O.C. v. Liberal R-II School Dist.</u>, 314 F.3d 920, 922 (8th Cir. 2002).  When a plaintiff introduces direct evidence that an illegal criterion, such as age or sex, was used in the decision to terminate the plaintiff, the court applies the <u>Price Waterhouse</u> analysis, as modified by § 107 of the Civil Rights Act of 1991.  <u>Breeding v. Arthur J. Gallagher & Co.</u>, 164 F.3d 1151, 1156 (8th Cir. 1999).  Under the modified <u>Price Waterhouse</u> test, a defendant is liable for discrimination upon proof by direct evidence that the employer had a discriminatory motive.  <u>Id.</u>  Evidence that the employer would have made the same decision to terminate without the

discriminatory motive is only relevant in determining the appropriate remedy. Id.

Direct evidence of discrimination is evidence of actions or comments by the employer that reflect a discriminatory attitude. Liberal R-II School Dist., 314 F.3d at 922. Stray remarks in the workplace, statements by non-decisionmakers, and statements by decisionmakers unrelated to the decisionmaking process are not direct evidence of discrimination. Id. "Comments which demonstrate a 'discriminatory animus in the decisional process' . . . or those uttered by individuals closely involved in employment decisions may constitute direct evidence within the meaning of Price Waterhouse." Liberal R-II School Dist., 314 F.3d at 923 (quoting Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991)).

In this case, Hansen has testified that Austin referred to her as "grandma" during weekly staff meetings. She alleges that he would call her "grandma" when they would make sales calls together, three or four times per week. Hansen testified that Austin told her that she was too old for the job when he fired her, and he complained that the company's health insurance premiums increased when her husband was diagnosed with a terminal illness. Cindy Weberg, one of Hansen's co-workers, testified that she overheard Austin tell Hansen that she was too old for the job and that she saw Austin treat Hansen worse than younger employees. Because Austin

6

took part in the decision to fire Hansen and his alleged comments reflect a discriminatory attitude, the Price Waterhouse analysis applies to this case.

Yellow Book contends that it terminated Hansen because she failed to meet sales targets and has introduced evidence that Hansen received written warnings for failing to meet sales targets before she was fired.  Viewing the evidence in the light most favorable to Hansen, there are genuine issues of material fact that preclude summary judgment.  A reasonable jury could believe Hansen's testimony.  See Liberal R-11 School Dist., 314 F.3d at 924 (noting that jury is free to reject plaintiff's allegations that defendant told him he was being fired because he was too old, but court cannot do so because it would require a credibility determination).  Moreover, Hansen's version of the events is partially corroborated by the testimony of a co-worker, and the record does not show any warnings for failure to meet sales targets until after Austin became her supervisor.  Accordingly, Yellow Book's motion for summary judgment is denied as to the claim that she was terminated in violation of the ADEA.

## II.   Alleged Hostile Working Environment Based on Age and Sex Discrimination

Hansen alleges she was subjected to a hostile working environment based on her age and sex.  To establish a hostile working environment claim, Hansen must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment based on age and sex; (3) the

harassment affected a term, condition, or privilege of her employment; (4) her employer knew or should have known of the harassment; and (5) the employer failed to take proper action. Peterson v. Scott County, 406 F.3d 515, 523-24 (8th Cir. 2005). See also Crawford v. Medina General Hosp., 96 F.3d 830, 834-35 (6th Cir. 1996) (recognizing a cause of action for hostile working environment based on age discrimination).

Hansen is a member of a protected group under the ADEA because she is older than 40. Because she is a woman, she is also a member of a protected group under Title VII, which prohibits employment discrimination based on race, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Austin was a supervisor, and Yellow Book does not allege that it took any action to remedy the allegedly hostile working environment. Thus, the only disputed issues are whether Hansen was subjected to unwelcome harassment based on age and sex and whether the harassment affected a term, condition, or privilege of her employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)

"Harassment based on an individual's sex, in violation of Title VII, or age, in violation of the ADEA, is actionable when that harassment is 'so severe or pervasive' as to 'alter the conditions of the victim's employment and create an abusive working environment.'" Breeding v. Gallagher, 164 F.3d 1151, 1158 (8th Cir. 1999) (quoting Faragher, 524 U.S. at 786). To establish a hostile work environment under Title VII or ADEA, the harassment must be

8

both objectively and subjectively offensive.  <u>Peterson</u>, 406 F.3d at 524.  The court considers whether a reasonable person would find the environment hostile and abusive in light of all the circumstances, including whether the conduct "is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  <u>Id.</u> (quoting <u>Faragher</u>, 524 U.S. at 787-788).  To satisfy the high threshold of actionable harm, Hansen must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." <u>Elmahdi v. Marriott Hotel Servs., Inc.</u>, 339 F.3d 645, 653 (8th Cir. 2003). Occasional teasing, offhand comments and sporadic use of abusive language do not amount to discriminatory changes in the terms and conditions of employment.  <u>Peterson</u>, 406 F.3d at 524.

As noted above, Hansen alleges that Austin referred to her as "grandma" during staff meetings and sales calls almost every day, repeatedly told her that she was too old for the job and complained on more than one occasion that she and her husband had caused health insurance premiums for younger workers to increase.  Hansen testified that when she worked with Austin, she would become "shaky" because of his constant criticism and comments that she was too old for the job.  Hansen Dep. at 166 (Docket 43-3).  Hansen alleged Austin threatened to terminate her several times and that she believed Austin was trying to get rid of her.  She alleged that he took profitable accounts away from her and gave them to younger employees.

9

Hansen testified that she was the only salesperson who was not allowed to use the company art department for her ads.  Hansen Dep. at 121-24. Weberg testified that she saw Austin treat Hansen worse than younger employees by talking down to her, ignoring her questions, or responding to her rudely.

In Peterson, 406 F.3d at 524, the plaintiff's supervisor repeatedly called her an "old lady," once told her that she did not have the "right parts" to take on additional shifts, and on one occasion refused to provide her additional training because it "was too hard to train old ladies."  The court affirmed summary judgment for the defendant on the hostile work environment claim because these comments were just teasing and offhand comments that did not reach the level of actionable harassment.  Id. at 524 (citing Gipson v. KAS Snacktime Co., 171 F.3d 574, 579-80 (8th Cir. 1999)).  Here, Austin's alleged harassment was worse than the alleged harassment in Peterson because Austin allegedly made age-related comments in front of Hansen's co-workers at least once per week, called her "grandma" almost every work day, and repeatedly told her that she was too old for the job.  While the plaintiff in Peterson was allegedly denied additional training that would allow her to take on more responsibility, Hansen has testified that she was the only employee not allowed to use the company's art department, which she needed in order to meet the sales targets of her position.

10

Yellow Book alleges Hansen was fired for missing her sales targets. Hansen has alleged that Austin threatened to fire her several times. Considering the totality of the circumstances, this is evidence of more than occasional teasing, offhand comments and sporadic use of abusive language. See Peterson, 406 F.3d at 524.  Cf. Breeding v. Gallagher, 164 F.3d 1151, 1159 (8th Cir. 1999) (two age-related comments made three years apart were too isolated and innocuous to permit a finding that they altered the terms of plaintiff's employment).  Finally, Hansen testified that when she told Austin that she was offended by being called "grandma," he laughed at her and the comments continued.  Hansen Dep. 95-96 (Docket 38-2).  Cf. Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 2006 WL 668220 (8th Cir. 2006) (affirming summary judgment on hostile work environment claim where supervisor made two racist remarks to plaintiff but apologized and never repeated them).

"Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury."  Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) (affirming hostile work environment judgment for plaintiff partly because of frequency of conduct).  Summary judgment "should seldom be utilized in employment discrimination cases."  Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005) (quotations omitted).  Viewing the evidence in the light most favorable to Hansen, the court finds that there are disputed issues of material fact as to the ADEA hostile work environment claim.

11

Regarding the allegedly hostile work environment based on sex discrimination, Hansen testified that Austin told her that women should be kept home barefoot and pregnant, which she characterized as "an off statement made some time in my employment." Hansen Dep. at 198 (Docket 43-4). Austin allegedly told Hansen several times that she would not have good rapport with customers because she was a woman, and he once told her that men did a better job than women. Id. at 174-75, 199-200. Hansen alleged that during two business trips, Austin entered her hotel room to get documents while she stood in the doorway, which made her uncomfortable. Id. at 131-33. She did not allege that Austin touched her in an offensive way or said anything to her during these incidents. DSUMF ¶¶ 9-10. Finally, Hansen alleged that Austin told her she would be fired if she reported sex discrimination. Hansen Dep. at 200.

Unlike the allegations of frequent age-related insults, the alleged comments based on Hansen's sex do not rise to level of actionable harassment. These are merely offhand comments and sporadic use of abusive language that do not amount to discriminatory changes in the terms and conditions of employment. Peterson, 406 F.3d at 524. Accordingly, defendant's motion for summary judgment is granted as to the Title VII hostile work environment claim and denied as to the ADEA hostile work environment claim. Cf. Breeding, 164 F.3d at 1159 (affirming summary

12

judgment for defendant on ADEA hostile work environment claim while

reversing summary judgment for defendant on sex discrimination hostile

work environment claim).

**III.    Alleged Wrongful Termination in Violation of Title VII**

Hansen alleges that Yellow Book terminated her because of her gender

in violation of Title VII.  Yellow Book alleges that Hansen did not suffer an

adverse employment action.  Yellow Book also contends that Hansen failed to

allege that her termination was an act of discrimination in her complaint to

the EEOC, and thus she has waived the claim by failing to exhaust her

administrative remedies.[1]

Before filing a lawsuit, a plaintiff must exhaust his or her administrative

remedies with the EEOC.  Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th

Cir. 1996).  To exhaust remedies, a Title VII plaintiff must timely file charges

with the EEOC and receive a right to sue letter.  Id.  The claimant must give

notice of all claims of discrimination in the administrative complaint.  Stuart

---

[1]Yellow Book cited Ross v. City of Independence, Mo., 76 Fed. Appx. 108 (8th Cir. 2003), an unpublished opinion, without indicating that it was unpublished or providing a copy to the court.  U.S.Ct. of App. 8th Cir. Rule 28A(i) provides that:  "Unpublished opinions are decisions which a court designates for unpublished status.  They are not precedent and parties generally should not cite them . . . A party who cites an unpublished opinion in a document must attach a copy of the unpublished opinion to the document. . .  When citing an unpublished opinion, a party must indicate the opinion's unpublished status."

v. General Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000).  When

determining whether an allegedly discriminatory action falls within the scope

of the complaint, the court must construe the complaint liberally to promote

the remedial goals of anti-discrimination legislation.  Id. at 631.  The breadth

of the civil suit is "as broad as the scope of any investigation that reasonably

could have been expected to result from the initial charge of discrimination."

Id.

        In this case, the record is full of references to Hansen's termination as

an alleged act of discrimination.  In her complaint to the South Dakota

Division of Human Rights, Hansen checked boxes indicating she believed she

was "Fired" because of her "Sex" and "Age."  See Pl.'s Ex. L at 2 (Docket 43).

Because South Dakota did not have jurisdiction over the age charge, it

forwarded Hansen's claim to the EEOC.  Pl.'s Ex. M (Docket 43-7).  In her

EEOC charge, Hansen stated "I believe I have been discriminated against on

the basis of my sex, female, and my age for the following reasons . . . When

Mr. Austin terminated me on May 24, 2002 he made negative comments to

me regarding my age and gender."  Pl.'s Ex. N at 1-2 (Docket 43).  Hansen's

complaint filed with this court alleges "harassment based on her age and

gender when she was terminated by Defendant on Friday, May 24, 2002."

Compl. ¶ 14.  Because Hansen repeatedly alleged that she was terminated

due to sex and age discrimination, she has exhausted her administrative

14

remedies as to the alleged discriminatory termination and did not waive this claim.[2]

In contrast to her ADEA wrongful termination claim, Hansen does not allege that there is direct evidence that she was terminated for discriminatory reasons. In the absence of direct evidence of sex discrimination, the court analyzes the claim using the familiar McDonnell Douglas standard. Peterson 406 F.3d at 521 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). The plaintiff has the initial burden of establishing a prima facie case of employment discrimination. Id. A prima facie case of employment discrimination raises a legal presumption of discrimination, requiring the defendant to show a nondiscriminatory reason for its actions. Peterson, 406 F.3d at 521. The plaintiff then has the opportunity to demonstrate that the defendant's explanation was actually a pretext for unlawful discrimination. Id.

To establish a prima facie case of sex discrimination, Hansen must show that: (1) she was a member of a protected group, (2) she was meeting the legitimate expectations of her employer, (3) she suffered an adverse employment action, and (4) there are facts that permit an inference of

---

[2]Because Hansen suffered an adverse employment action, Yellow Book's argument that it is entitled to an affirmative defense based on Hansen's failure to complain about Austin's alleged harassment is without merit. This defense is only available when no tangible employment action has been taken. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

discrimination.  <u>Zhuang v. Datacard Corp.</u>, 414 F.3d 849, 854 (8th Cir. 2005).

Hansen is a member of a protected group and has alleged an adverse

employment action.

Yellow Book contends that Hansen cannot establish a prima facie case

of sex discrimination because Hansen was not meeting its legitimate

expectations because she consistently missed her sales targets.  When the

defendant alleges a legitimate nondiscriminatory reason for its actions, the

burden shifts to the plaintiff to show that it was a pretext for unlawful

discrimination.  <u>Zhuang</u>, 414 F.3d at 855.  Yellow Book further alleges that

there are no facts that would permit an inference of discrimination.

Hansen concedes that she missed sales targets, but argues that her job

performance declined because Austin took profitable sales accounts away

from her and gave them to younger or male employees, and subjected her to a

hostile work environment.  Almost all of the alleged discriminatory actions

and comments in this case involve Hansen's age, not her gender.  The

allegations that Austin occasionally made sexist comments and reassigned an

account to a male employee are not enough to support an inference that her

termination was an act of sex discrimination.  <u>See</u> <u>Zhuang</u>, 414 F.3d at 854.

Thus, she has not stated a prima facie case of sex discrimination in violation

of Title VII.  Accordingly, defendant's motion for summary judgment is

granted on the Title VII wrongful termination claim.

## IV.   Alleged Violations of South Dakota Anti-Discrimination Statutes

Hansen alleged causes of action under SDCL 20-13-1 et. seq.  Under

20-13-10 employers may not discriminate based on "race, color, creed,

religion, sex, ancestry, disability, or national origin."  Accordingly, South

Dakota's anti-discrimination law does not apply to allegations of age

discrimination in employment.  See also Op. Att'y Gen. No. 85-38, 1985 WL

257743 (discrimination on the basis of age does not violate South Dakota law

but does violate ADEA).  The court has found that Yellow Book is entitled to

summary judgment on Hansen's Title VII sex discrimination claims.  Because

the elements of employment discrimination under South Dakota law and Title

VII are similar, the court grants Yellow Book's motion for summary judgment

as to Hansen's state law anti-discrimination claim.  See Huck v. McCain

Foods, 479 N.W.2d 167, 169 (S.D. 1991) (noting similarity of Title VII and

SDCL 20-13-10).  See also Gardner v. Tripp County, S.D., 66 F. Supp. 2d

1094, 1100 (D.S.D. 1998).

## V.   Alleged Violation of Family and Medical Leave Act

Hansen alleges that Yellow Book denied her medical leave in violation of

the Family and Medical Leave Act (FMLA).  See Compl. ¶¶ 22-27.  Under the

FMLA, an eligible employee is entitled to 12 work weeks of leave in any 12-

month period in order to care for a spouse who has a serious health problem.

29 U.S.C. § 2612(a)(1)(C).  In order to invoke the protections of the FMLA, an

employee must provide her employer with enough information to show that

17

she may need FMLA leave.  See Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005).  Employees have an affirmative duty to indicate both the need and reason for medical leave and let their employer know how much time off they need.  Id.  The FMLA prohibits an employer from interfering with or denying the exercise or attempt to exercise any FMLA rights.  Rodgers v. City of Des Moines, 435 F.3d 904, 909 (8th Cir. 2006).

Yellow Book contends that it is entitled to summary judgment on the claim because Hansen did not provide written medical certification of her need for FMLA leave.  Pursuant to the FMLA, an employee must give at least 30 days notice before the date the leave is to begin, "except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable."  29 U.S.C. § 2612(e)(2)(B).  An employer may require that a request for leave under this section be supported by a certification issued by the health care provider.  29 U.S.C. § 2613(a).  The Eighth Circuit has held that "[a]n employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work."  Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 852 (8th Cir. 2002) (quoting Thorson v. Gemini, Inc., 205 F.3d 370, 381 (8th Cir. 2000)).  The employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may need FMLA leave.  Spangler, 278 F.3d at 852.

18

See also Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 144 (3[d]
Cir. 2004) (holding employer's failure to notify employee who requested leave
that he may be entitled to FMLA leave may constitute "interference" with
FMLA).

If an employer feels that the employee's documentation of the need for
FMLA leave is inadequate, the employer has an affirmative duty to advise the
employee that the medical certification is incomplete and provide the
employee a reasonable opportunity to cure the deficiency.  Sorrell v. Rinker
Materials Corp.,  395 F.3d 332, 337 (6th Cir. 2005) (citing 29 C.F.R.
§ 825.305(d)).  Hansen alleges that she was not told that she needed to
provide written documentation of her need for leave.  Hansen testified that
she was denied time off when her husband was undergoing a cancer exam,
and she only received half a day off when her husband had heart surgery.
She also testified that Austin threatened to fire her if she obtained medical
leave from his supervisor.  Because Yellow Book does not allege that it
informed her that she may be entitled to medical leave if she submitted
proper documentation, the court will not grant summary judgment based on
Hansen's failure to provide it.  Viewing the evidence in the light most
favorable to Hansen, a reasonable jury could find that Yellow Book interfered
with her FMLA rights by denying her requests for time off and threatening to
terminate her if she obtained leave from Austin's superiors.

19

Yellow Book relies on <u>Frazier v. Honda of America Mfg., Inc.</u>, 431 F.3d 563, 567 (6th Cir. 2005) and <u>Bailey v. Amsted Industries, Inc.</u>, 172 F.3d 1041, 1046 (8th Cir. 1999) for its argument that Hansen's FMLA claim must be dismissed because she failed to provide written documentation of her need for FMLA leave.  In <u>Frazier</u>, 431 F.3d at 566, the employer repeatedly asked for written documentation of the plaintiff's medical needs after the employee asked for leave.  Because the plaintiff did not submit written documentation in a timely manner, the court upheld summary judgment for the defendant. <u>Id.</u>  In <u>Bailey</u>, 172 F.3d at 1046, the district court found that the plaintiff failed to give any notice, whether written or verbal, that he needed time off for doctor's appointments.  In affirming summary judgment for the employer, the court rejected his argument that the notice requirements were satisfied by the company's knowledge that he had medical problems and would need to miss work occasionally.  <u>Id.</u>  Unlike the defendant in <u>Frazier</u>, Yellow Book does not allege that it informed Hansen that her documentation was insufficient or that it provided her with an opportunity to cure the deficiency. Yellow Book does not allege that Hansen failed to notify Yellow Book that she wanted FMLA leave, like the plaintiff in <u>Bailey</u>, and Hansen testified that she asked Austin for time off twice.  Thus, neither case supports Yellow Book's motion for summary judgment on the FMLA claim.

Yellow Book contends that Hansen failed to establish a prima facie case for FMLA retaliation because she was not fired until 18 months after she attempted to exercise her FMLA rights.  Because Hansen's complaint only alleges that Yellow Book violated FMLA by denying leave and did not allege retaliation, the court will not address the FMLA retaliation issue.

## VI.   Intentional/Reckless Infliction of Emotional Distress

Hansen alleges that Austin's harassment and ridicule of her constitutes intentional infliction of emotional distress (IIED).  Yellow Book contends that it is not responsible for the alleged IIED because Austin was not acting within the scope of his employment when he allegedly harassed her.  Yellow Book forbids its employees from harassing other employees.

A corporation may be liable for the intentional torts of an employee through the respondeat superior doctrine, if the employee was acting on behalf of the corporation when he committed the alleged IIED.  Bass v. Happy Rest, Inc., 507 N.W.2d 317, 320 (S.D. 1993).  "Generally, if an act is connected either directly or indirectly with the business of the employer (designed to benefit the employer's business), that act is conducted within the scope of employment."  Deuchar v. Foland Ranch, Inc., 410 N.W.2d 177, 180 (S.D. 1987).  The fact that the employee's act is expressly forbidden by the employer, or is done in a manner which has been prohibited, is relevant in determining what the employee has been hired to do, "but it is usually not

conclusive and does not in itself prevent the act from being within the scope of employment." Id. (quoting Prosser and Keeton on the Law of Torts § 70, at 502 (5th ed. W. Keeton 1984)).  An employer, however, will not be held liable for the acts of an employee who has embarked on a "frolic" of his own intending to serve "solely his own interests." Id. at 181.

The South Dakota Supreme Court has adopted the following foreseeability test for determining whether an employee's acts are within the scope of employment:

> [A] principal is liable for tortious harm caused by an agent where a nexus sufficient to make the harm foreseeable exists between the agent's employment and the activity which actually caused the injury; foreseeable is used in the sense that the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.

Id. (quoting Leafgreen v. American Family Mut. Ins. Co., 393 N.W.2d 275, 280 (S.D. 1986)).  The question of whether the act of an employee was within the scope of employment is a question for the jury in most cases.  Id.

In this case, all of the alleged incidents of harassment and ridicule took place during working hours in the workplace.  While harassment is not an action intended to benefit the employer, the fact that Yellow Book prohibits harassment suggests that it is foreseeable that a supervisor may harass or insult an employee in the workplace.  Hansen has also testified that Austin told her that he was going to get rid of her to reduce the company's health

22

insurance costs.  Thus, the court finds that there is at least a jury question

as to whether the alleged IIED occurred in the scope of Austin's employment.

> The elements of an IIED claim are:
>
> (1)  An act by defendant amounting to extreme and outrageous conduct;
> (2)  intent on the part of defendant to cause plaintiff severe emotional distress;
> (3)  the defendant's conduct was the cause in-fact of plaintiff's injuries; and
> (4)  the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

Petersen v. Sioux Valley Hosp. Ass'n, 486 N.W.2d 516, 518 (S.D. 1992)

(Petersen I).  See also Richardson v. East River Elec. Power Co-op., 531

N.W.2d 23, 27 (S.D. 1995); Maryott v. First Nat'l Bank of Eden, 624 N.W.2d

96, 104 (S.D. 2001).  Under South Dakota law, "the tort of intentional

infliction of emotional distress imposes liability on the defendant for

intentional and reckless conduct resulting in emotional distress."  Petersen v.

Sioux Valley Hosp. Ass'n, 491 N.W.2d 467, 468 (S.D. 1992) (Petersen II)

(emphasis in original).  A defendant may be liable for IIED under a

recklessness theory where his or her conduct constitutes a deliberate

disregard of a high probability that the emotional distress will follow.  Id.

Conduct that qualifies as IIED "must be 'so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and

be regarded as atrocious, and utterly intolerable in a civilized community.'"

Harris v. Jefferson Partners, L.P., 653 N.W.2d 496, 500 (S.D. 2002) (quoting

Restatement (Second) of Torts § 46 cmt. d (1965)).  The question of whether
the defendant's conduct was extreme and outrageous is initially for the trial
court.  Id.  "When reasonable minds differ, it is for the jury to determine
whether the conduct has been sufficiently extreme and outrageous to result
in liability."  Kjerstad v. Ravellette Publ'g, Inc., 517 N.W.2d 419, 429 (S.D.
1994).  One way to find extreme outrage is "the defendant's knowledge that
the plaintiff is especially sensitive, susceptible, and vulnerable to injury
through mental distress at the particular conduct."  Id. (quoting The Law of
Torts, Ch. 2, § 12, 62 (5th ed. 1984)).

     In addition to the alleged derogatory comments made about her age and
sex, Hansen testified that Austin told her that her husband would be better
off dead rather than go through treatment for his terminal illness, and that
she and her husband were driving up the cost of health insurance for other
Yellow Book employees.  Because a reasonable jury could conclude that
Austin was aware that Hansen would be especially sensitive to mental
distress about her husband's terminal illness, Hansen has raised a jury
question as to whether Austin's statements are sufficiently outrageous to
constitute IIED.  See Kjerstad, 517 N.W.2d at 429.

     Hansen testified that she was prescribed anti-depressants as a result of
the stress she experienced at work.  Austin testified that when he fired her,
Hansen discussed killing herself.  Thus, Hansen has introduced evidence that
she suffered severe emotional distress, that the defendant's conduct was the

24

cause of her injuries and that she suffered an extreme disabling emotional response to defendant's conduct.  See Petersen, 486 N.W.2d at 518. Although Yellow Book is correct in asserting that it may terminate an employee even though the termination may cause emotional distress, the circumstances surrounding an employment termination can give rise to an IIED claim.  See, e.g., Moysis v. DTG Datanet, 278 F.3d 819, 827 (8th Cir. 2002).  Viewing the evidence in the light most favorable to Hansen, a reasonable jury could find that Yellow Book is liable for IIED based on her allegations of continual harassment and ridicule by Austin.  Accordingly, Yellow Book's motion for summary judgment is denied as to the IIED claim.

## VII.  Punitive Damages

### A.  ADEA Claim

"A claim for liquidated damages in an ADEA case is analogous to a claim for punitive damages in a tort action."  Wiehoff v. GTE Directories Corp., 61 F.3d 588, 594 (8th Cir. 1995).  Liquidated damages are punitive in nature.  Id. The ADEA authorizes liquidated damages when the employer willfully violates that statute.  Id. (citing 19 U.S.C. § 626(b)).  A violation is willful "if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."  Maschka v. Genuine Parts Co., 122 F.3d 566, 572 (8th Cir. 1997) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 614, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)).  A non-willful violation

may occur when the employer reasonably believed it was allowed to make an age-based decision in that particular circumstance.  Id.

Hansen has introduced evidence that her employer made an age-based decision when it fired her and that she was subjected to age-based discrimination in the work environment.  An anti-discrimination policy detailed in the employee handbook is evidence that an employer is aware that it may not make adverse employment decisions based on age.  Maschka, 122 F.3d at 572.  Yellow Book has not argued that it believed it was acting under an exception to the ADEA when it terminated her.  Thus, there is evidence from which a reasonable jury could find that the alleged violation was willful and sufficient to award liquidated damages to Hansen on her ADEA claim.  See id.

**B.  FMLA Claim**

In the context of an FMLA claim, liquidated damages are considered compensatory in nature rather than punitive.  Thorson v. Geminin, Inc., 96 F. Supp. 2d 882, 890-91 (N.D. Iowa 1999) (affirmed in Thorson v. Gemini, Inc., 205 F.3d 370 (8th Cir. 2000)).  An employer who interferes with FMLA rights is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation."  29 U.S.C. § 2617(a)(1)(A)(i)(I).  In a case where wages, salary, employment benefits, or other compensation has not been denied to the employee, the employer may be liable for "any actual monetary losses sustained by the

26

other employee as a direct result of the violation, such as the cost of providing care." 29 U.S.C. § 2617(a)(1)(A)(i)(II).  The damages in lost wages or other monetary losses may be doubled unless the defendant can prove that the violation was in good faith.  29 U.S.C. § 2617(a)(1)(A)(iii).  There is a strong presumption in favor of doubling.  <u>Thorson</u>, 96 F. Supp. 2d at 891.  The FMLA, however, does not authorize punitive damages.  <u>Walker v. United Parcel Service, Inc.</u>, 240 F.3d 1268, 1277 (10th Cir. 2001).  Because Yellow Book does not allege that any FMLA violation was done in good faith, and Hansen testified that she was told that she would be fired if she obtained medical leave, a reasonable jury could find that the alleged FMLA violation was not done in good faith.  Accordingly, Hansen may be entitled to liquidated damages on her FMLA claim, but punitive damages are not authorized.

**C.  IIED Claim**

Punitive damages may be awarded to a successful plaintiff on an IIED claim.  <u>Bass</u>, 507 N.W.2d at 324.  A jury may award punitive damages in "any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed."  <u>Dahl v. Sittner</u>, 474 N.W.2d 897, 900 (S.D. 1991) (citing SDCL 21-3-2).  Presumed, legal malice may be inferred when the defendant acts willfully or wantonly to the injury of another.  <u>Id.</u>  The South Dakota Supreme Court defined malice in the context of SDCL 21-3-2 as "not simply the doing

27

of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations." Id. (quoting Hannahs v. Noah, 158 N.W.2d 678, 682 (S.D. 1968)).  Willful and wanton misconduct is behavior that demonstrates the defendant "consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff." Flockhart v. Wyant, 467 N.W.2d 473, 478 (S.D. 1991) (affirming punitive damages award where defendant crashed her car after driving 50 miles on the interstate with a blood alcohol level of .30).

A punitive damages claim may not be submitted to the jury unless the court finds by clear and convincing evidence "that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against." SDCL 21-1-4.1.  In construing SDCL 21-4-4.1 and 21-3-2 together, the "willful, wanton" language of 21-4-4.1 is equivalent to the presumed legal malice of 21-3-2.  Dahl, 474 N.W.2d at 900.

In this case, a reasonable jury could believe that Austin was aware that Hansen's husband had been recently diagnosed with a terminal illness, and that his constant harassment of her and statements that her husband would be better off dead would probably result in severe emotional distress for Hansen.  Thus, there is evidence that Austin engaged in willful and wanton misconduct.  See Flockhart, 467 N.W.2d at 478.  The court finds by clear and

28

convincing evidence that there is a reasonable basis to believe that there has been willful and wanton misconduct by Yellow Book, sufficient to submit this issue to the jury.

Accordingly, defendant's motion for summary judgment on punitive damages is denied as to the IIED claim and is granted on the ADEA and FMLA claims, but plaintiff will be allowed to seek liquidated damages.  It is hereby

ORDERED that defendant's motion for summary judgment (Docket 37) is granted in part and denied in part.

Dated April 12, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

29